**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | |
|---|---|
| WILLIAM E. SMITH TRUCKING,<br>INC.<br><br>          Plaintiff,<br><br>          v.<br><br>RUSH TRUCKING CENTERS OF<br>NORTH CAROLINA, INC.,<br>RUSH TRUCK LEASING, INC.,<br>CAROLINA TRACTOR &<br>EQUIPMENT COMPANY, and<br>CATERPILLAR, INC.,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)     1:11CV887<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

The instant matter comes before the undersigned United States Magistrate Judge on Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447(c) (Docket Entry 12).  (See Docket Entry dated Jan. 6, 2011; see also Docket Entries dated Oct. 25, 2011 (assigning case to undersigned Magistrate Judge and designating case as subject to handling pursuant to this Court's Amended Standing Order No. 30).)[1]  For the reasons that follow, Plaintiff's Motion will be granted in part and denied in part.

## I. Background

The following facts are alleged in Plaintiff's First Amended Complaint (Docket Entry 5):

---

[1] Under said Standing Order, "[t]he magistrate judge to whom the case is assigned will rule or make recommendations upon all motions, both non-dispositive and dispositive."  M.D.N.C. Amended Standing Order No. 30, ¶ 2; see also M.D.N.C. R. 72.2 ("Duties and cases may be assigned or referred to a magistrate judge . . . by the clerk in compliance with standing orders . . . .").)

Plaintiff William E. Smith Trucking, Inc. ("Smith Trucking") purchases trucks from commercial dealers for use in its own fleet. (See id., ¶ 10.) In making these purchases, Smith Trucking determines certain specifications it wants for the trucks, such as the truck model and engine, after consultation with the relevant manufacturers. (See id., ¶ 11.) Smith Trucking then orders the trucks with the desired specifications from its dealers and pays the purchase price to those dealers upon delivery. (See id.)

In 2008, Smith Trucking wished to purchase trucks with the 2007 EPA Compliant C-15 On-Highway Diesel Engine (the "Caterpillar Engine") manufactured by Defendant Caterpillar, Inc. ("Caterpillar"). (See id., ¶¶ 13, 14.) Smith Trucking made this decision after discussing these engines both with Caterpillar and Carolina Tractor & Equipment Company ("Carolina Tractor"), and receiving from Caterpillar and Carolina Tractor certain express oral and written warranties that said engines would be suitable for Smith Trucking's intended purpose. (See id., ¶¶ 15, 16.)

Smith Trucking had agreements with Rush Trucking Centers of North Carolina, Inc. and Rush Truck Leasing, Inc. (collectively, "Rush Trucking") to order and purchase three trucks equipped with the Caterpillar Engine, and agreements with Peterbilt Carolina, Inc. ("Peterbilt") to order and purchase nine trucks equipped with the Caterpillar Engine. (See id., ¶¶ 17-18.) Both Rush Trucking and Peterbilt supplied the trucks to Smith Trucking as they were

manufactured and Smith Trucking paid the purchase price for each as it was delivered. (See id., ¶¶ 20, 21.)

After Smith Trucking accepted delivery of the trucks, it discovered the Caterpillar Engines "persistently malfunctioned, broke down and were otherwise defective, unrepairable, inoperative, unmerchantable and unfit for their intended purposes." (Id., ¶ 22.) Although Smith Trucking repeatedly took the trucks to establishments authorized by Caterpillar to repair the engines, said establishments were not able to repair the engines to a degree satisfactory to Smith Trucking. (See id., ¶ 23.)

Based on the foregoing factual allegations, Smith Trucking asserted claims against Defendants Caterpillar, Rush Trucking, Peterbilt and Carolina Tractor in Surry County Superior Court for breach of warranty and violation of North Carolina's unfair and deceptive trade practices act. (See id., ¶¶ 29-35; see also Docket Entry 2, ¶ 1.) Smith Trucking subsequently voluntarily dismissed Peterbilt and agreed to voluntarily dismiss Carolina Tractor as Defendants. (See Docket Entry 2, ¶¶ 3, 4; Docket Entry 2-1; Docket Entry 2-2.)[2] Accordingly, only Rush Trucking and Caterpillar effectively remain as Defendants. (See Docket Entry 2, ¶ 5.)

Although Rush Trucking, like Smith Trucking, is a corporation organized and existing under the laws of North Carolina and has its

---

[2] Although Smith Trucking has agreed to settle its claims against Carolina Tractor by email dated September 21, 2011, Smith Trucking has not yet formally dismissed Carolina Tractor. (See Docket Entry 13 at 2; Docket Entry 2-2.)

principal place of business in North Carolina (see Docket Entry 5, ¶¶ 2, 3), Caterpillar filed a notice of removal to this Court on the basis of diversity of citizenship (see Docket Entry 2, ¶ 11). Caterpillar alleges that Smith Trucking joined Rush Trucking fraudulently in order to avoid federal jurisdiction. (See id., ¶ 8.) Smith Trucking subsequently filed Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447(c) contending that it "has legitimate, colorable claims against Defendant Rush Trucking that it wishes to pursue" (see Docket Entry 12 at 2). Smith Trucking also moves to recover attorney's fees incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c). (See id., ¶ 7.)

## II. Magistrate Judge Authority in this Context

Under federal law, for cases proceeding in a United States District Court:

> A judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A) (emphasis added).[3]

---

[3] As to the eight pretrial matters specified in Section 636(b)(1)(A) (as well as certain applications and petitions from prisoners) a magistrate judge may issue a recommended ruling. See 28 U.S.C. § 636(b)(1)(B) ("[A] judge may also
(continued...)

The United States Court of Appeals for the Fourth Circuit has construe the foregoing statutory language as follows: "Under 28 U.S.C. § 636(b)(1)(A) a judge may have a magistrate decide <u>any</u> 'pretrial matter' <u>except</u> certain <u>specified</u> motions. <u>These</u> <u>exceptions</u> are motions which Congress considered to be '<u>dispositive</u>.'" <u>Aluminum Co. of Am., Badin Works, Badin, N.C. v.</u> <u>United States Envtl. Prot. Agency</u>, 663 F.2d 499, 501 (4th Cir. 1981) (emphasis added) (citing House Report No. 94-1609, P.L. 94-577, reprinted at U.S. Code Cong. & Ad. News 6162 (1976)) (ruling that "judge could not have referred [filing labeled as Motion to Quash Warrant via which filing party sought variety of injunctive relief beyond quashing of warrant] under § 636(b)(1)(A) . . . [because] motion was not a 'pretrial matter' but set forth all of the relief requested [in the case]").[4] By published

---

[3](...continued)
designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."). Additionally, "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

[4] By explaining that the eight motions listed in Section 636(b)(1)(A) constitute the pretrial matters "which Congress considered to be 'dispositive,'" <u>Aluminum Co. of Am.</u>, 663 F.2d at 501, the Fourth Circuit harmonized Section 636(b)(1) with Federal Rule of Civil Procedure 72, which provides that: 1) "[w]hen a pretrial matter <u>not dispositive</u> of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision . . . [after which the] district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law," Fed. R. Civ. P. 72(a) (emphasis added); and 2) "[a] magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial
(continued...)

decision, the Fourth Circuit thus has stated that, consistent with the plain language of Section 636(b)(1)(A), a magistrate judge may decide <u>any</u> pretrial matter <u>except</u> the eight motions Congress <u>specified</u> in said statutory provision.  The Fourth Circuit since has reiterated that view, albeit by unpublished opinion.  <u>Batiste v. Catoe</u>, 27 Fed. Appx. 158, 159 (4th Cir. 2001) (holding that magistrate judge's ruling on pretrial motion not listed in Section 636(b)(1)(A) constituted "nondispositive" order and citing in support <u>Maisonville v. F2 Am.</u>, 902 F.2d 746, 747-48 (9th Cir. 1990), and determination therein that "'dispositive' motions are limited to the listing contained in § 636(b)(1)(A)").

Thereafter, based on the Fourth Circuit's decisions in <u>Aluminum Co. of Am.</u> and <u>Batiste</u>, as well as the plain language of Section 636(b)(1)(A), a district judge of a neighboring district court rejected the "argu[ment] that a magistrate judge does not have the authority [under Section 636(b)(1)(A)] to render a final order remanding a case [to state court], and any decision by the magistrate judge attempting to do so should be treated as proposed

---

[4](...continued)
matter <u>dispositive</u> of a claim or defense . . . [and] must enter a recommended disposition, . . . [as to which the] district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to," Fed. R. Civ. P. 72(b) (emphasis added).  This harmonization resolves what a judge in an adjacent district described as "a disconnect between Rule 72 and the Magistrates Act, 28 U.S.C. § 636(b) . . . [arising from the fact that the] former permits a magistrate judge to decide any motion which is not 'dispositive of a party's claim or defense,' but the latter appears written to allow magistrate judges to 'hear and determine any pretrial matter pending before the court,' minus eight enumerated exceptions." <u>Stonecrest Partners, LLC v. Bank of Hampton Rds.</u>, 770 F. Supp. 2d 778, 783 n.3 (E.D.N.C. 2011).

findings and recommendations, which the reviewing district court must review 'de novo' under 28 U.S.C. § 636(b)(1)(B)." <u>Wachovia Bank, N.A. v. Deutsche Bank Trust Co. Ams.</u>, 397 F. Supp. 2d 698, 700-02 (W.D.N.C. 2005) (Thornburg, J.).[5] Regarding the text of Section 636(b)(1)(A), Judge Thornburg stated: "[T]he language of § 636(b)(1)(A) is exceedingly clear that a magistrate judge may 'hear and determine *any* pretrial matter pending before the court, *except*' a very specific list of eight matters. Congress would be hard-pressed to use language more clearly indicating its intent to create an exhaustive list than '*any . . . except.*'" <u>Id.</u> at 701 (ellipses and italics in original).

He then concluded: "[I]f Congress had intended to include motions to remand on that list, it could, should and would have[,] yet despite several amendments to the Federal Magistrate's Act over the years, Congress has not seen fit to insert such a limitation in magistrate judge authority." <u>Id.</u> (internal brackets and ellipses omitted); <u>see also</u> <u>Everett v. Cherry</u>, 671 F. Supp. 2d 819, 821 n.4 (E.D. Va. 2009) ("Section 636(b)(1) enumerates those pre-trial matters that, if referred to a magistrate judge, must be reviewed de novo by a district judge upon objection. The Court will not make the unprincipled decision to rewrite the statute, adding 'motions to amend' to those pre-trial matters, for that is the

---

[5] In so doing, Judge Thornburg thoroughly scrutinized contrary authority from other federal circuit courts and convincingly explained the analytical shortcomings of those decisions. <u>See</u> <u>Wachovia Bank</u>, 397 F. Supp. 2d at 701-02.

province of Congress."), aff'd sub nom., Everett v. Prison Health
Servs., 412 Fed. Appx. 604, 605 & n.2 (4th Cir. 2011) ("Everett
moved for leave to amend her complaint . . . to add Appellee Prison
Health Services, Inc. ('PHS') as a defendant based on information
obtained during discovery, and to add a state-law claim of medical
malpractice against PHS. After a hearing, the magistrate judge
denied Everett's motion. Everett timely objected, thereby
preserving the issue for review by the district court. . . . [T]he
district court could not modify or set aside any portion of the
magistrate judge's order unless the magistrate judge's decision was
'clearly erroneous or contrary to law.' Fed. R. Civ. P. 72(a); 28
U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2010).").[6]

In a prior case, after careful consideration, the undersigned
Magistrate Judge followed Judge Thornburg's foregoing ruling.
Thomas v. North Carolina, No. 1:10CV226, 2010 WL 2176075, at *6-8
(M.D.N.C. May 21, 2010) (unpublished). Since that time, however,
the Fourth Circuit issued Reddick v. White, No. 08-2286, 2011 WL
6000552 (4th Cir. Dec. 1, 2011) (unpublished). In Reddick, the

_____

[6] Notably, in Everett, the Fourth Circuit affirmed the district judge's
application of clearly erroneous review to the magistrate judge's order denying
the motion to amend without regard to whether that denial was dispositive as to
the plaintiff's claim against the putative defendant. See Everett, 412 Fed.
Appx. at 605 n.2. Moreover, as the undersigned Magistrate Judge previously has
noted, "the circuit courts that have spoken have found that magistrate judges may
enter orders [on motions to amend], notwithstanding the theoretical 'dispositive'
nature of such rulings (and have cited the plain language of Section 636(b)(1)
[which omits such motions from the list of pretrial matters excepted from the
general grant of magistrate judge authority] in support of that position)."
Thomas v. North Carolina, No. 1:10CV226, 2010 WL 2176075, at *8 (M.D.N.C. May 21,
2010) (unpublished) (citing, inter alia, Hall v. Norfolk Southern Ry. Co., 469
F.3d 590, 595 (7th Cir. 2006)).

-8-

plaintiffs moved, pursuant to the district court's inherent power, for sanctions against a non-party the plaintiffs had subpoenaed. Id. at *1. "The district court referred the [sanctions] matter to a magistrate judge for an evidentiary hearing." Id. According to the docket sheet for the case, "the magistrate judge was to enter a 'report and recommendation.'" Id. at *1 n.*.

"During the pendency of this [sanctions] motion, the [plaintiffs] settled the underlying . . . litigation." Id. at *1. Thereafter, "the magistrate judge issued a lengthy order denying the motion for sanctions. The [plaintiffs] filed objections to the magistrate judge's ruling and specifically requested a de novo review by the district court." Id. (italics in original). The district judge, however, expressly applied the clearly erroneous standard in affirming the magistrate judge's order. See id.

"On appeal, the [plaintiffs] argue[d] that the district court erred in applying a clearly erroneous standard instead of a de novo standard in reviewing the magistrate judge's ruling." Id. The Fourth Circuit agreed and held that "[a] motion for sanctions under the district court's 'inherent' power is not a pretrial matter under § 636(b)(1)(A)." Id. at *2 (emphasis added). Rather, the Fourth Circuit concluded, the magistrate judge's only possible source of authority to act on the sanctions motion arose "under § 636(b)'s 'additional duties' clause, [as to] which de novo review of the exercise of those powers is required." Id. (italics in

original) (citing <u>United States v. Osborne</u>, 345 F.3d 281, 289-90 (4th Cir. 2003), for proposition that United States Constitution requires district judge to review de novo, when requested, matters referred to magistrate judge under "additional duties" clause, 28 U.S.C. § 636(b)(3)). Although the foregoing conclusions established the necessary predicate for the Fourth Circuit's action, i.e., "vacat[ing] the district court's order and remand[ing] the case for the district court to perform a *de novo* review of the magistrate judge's order denying sanctions," <u>id.</u> at *3 (italics in original), the <u>Reddick</u> opinion also addresses other matters beyond that required for the disposition.

First, it states: "Section 636(b)(1)(A) provides that a district court may 'designate a magistrate judge to hear and determine any pretrial matter pending before the court,' except for a <u>non-exhaustive</u> list of motions detailed in the statute." <u>Id.</u> at *1 (emphasis added) (citing only to statute itself). Second, whereas the Fourth Circuit previously had effectively harmonized Section 636(b)(1) and Federal Rule of Civil Procedure 72 (which, unlike Section 636(b)(1), contains the term "dispositive") by treating the eight motions listed in Section 636(b)(1)(A) as the pretrial matters "which Congress considered to be 'dispositive,'" <u>Aluminum Co. of Am.</u>, 663 F.2d at 501, <u>see</u> discussion, <u>supra</u>, n.4, <u>Reddick</u> created symmetry between Section 636(b)(1) and Federal Rule of Civil Procedure 72, by declaring that Section 636(b)(1) excepts

from its grant of authority for magistrate judges to decide "any pretrial matter," not just the eight listed motions, but also any pretrial matter deemed "dispositive" in some fashion. See Reddick, 2011 WL 6000552, at *1-2. Third, Reddick observes: "[T]he sanctions order in this case addressed a non-party and was issued after the conclusion of the underlying litigation. The magistrate judge's ruling was thus 'dispositive of a claim,' that is, a claim for sanctions against [the non-party]." Id. at *2.[7]

The question thus becomes whether, in light of Reddick, the determination reached in Thomas (i.e., to follow Wachovia Bank in concluding that a magistrate judge may enter an order on a motion to remand) should stand. For three reasons, the answer is yes.

First, Reddick's description of Section 636(b)(1)(A)'s list of motions as non-exhaustive appears contrary to the construction of that statutory provision in Aluminum Co. of Am. and the latter, as a published decision, must control over the former, an unpublished decision. See, e.g., United States v. Ruhe, 191 F.3d 376, 391-92 (4th Cir. 1999) ("The district court relied on [an unpublished Fourth Circuit decision] to support [the district court's]

_____

[7] These three statements were unnecessary to the decision to vacate and to remand because the Reddick Court ruled that "[a] motion for sanctions under the district court's 'inherent' power is not a pretrial matter under § 636(B)(1)(a)." Reddick, 2011 WL 6000552, at *2 (emphasis added). Because Section 636(b)(1)(A) authorizes magistrate judges to enter orders only as to "pretrial matter[s]," the conclusion that the sanctions motion failed to constitute a "pretrial matter" obviated any need to resolve whether the sanctions motion nonetheless fell outside the authorization for magistrate judge disposition in Section 636(b)(1)(A) on the ground that, although sanctions motions do not appear in the list of exceptions in Section 636(b)(1)(A), the list implicitly includes other pretrial motions deemed dispositive.

-11-

decision. . . . [U]npublished opinions are not binding precedent in this circuit . . . [and], to the extent that [unpublished Fourth Circuit decision cited by the district court] conflicts with [a published Fourth Circuit decision], we are controlled by the published decision."); <u>United States v. White</u>, 572 F.2d 1007, 1008 n.1 (4th Cir. 1978) ("Boone, as a published opinion, is entitled to greater precedential value than DeRose which was unpublished, should any question arise as to which controls.").

Second, the declaration in <u>Reddick</u> that Section 636(b)(1)(A) sets forth a "non-exhaustive" list of exceptions to the authority of a magistrate judge to rule on pretrial matters (which conflicts with the reasoning in <u>Wachovia Bank</u> adopted in <u>Thomas</u>) constitutes undeveloped dicta in tension with other unpublished Fourth Circuit decisions (i.e., <u>Batiste</u> and <u>Everett</u>), as well as the plain language of the statutory text as persuasively analyzed by Judge Thornburg. <u>See, e.g.</u>, <u>Ruhe</u>, 191 F.3d at 392 ("We are not controlled here by [the unpublished Fourth Circuit decision that the district court cited]. First, unpublished opinions are not binding precedent in this circuit. Second, the above-quoted passage [from the cited unpublished decision] is dicta." (internal citations omitted)); <u>Vester v. Rogers</u>, 795 F.2d 1179, 1183 n.4 (4th Cir. 1986) ("To the extent that there is any contrary language in [the] unpublished [Fourth Circuit] decision . . . cited in appellant's brief, we do not find it controlling. . . . The

discussion in [said unpublished decision constitutes] . . . *dicta*.
The usually diminished precedential value of such *dicta* is further
reduced when it is taken from an unpublished decision . . . ."
(italics in original)); <u>Board of Comm'rs of Hertford Cnty., N.C. v.</u>
<u>Tome</u>, 153 F. 81, 87 (4th Cir. 1907) ("[E]xpressions found in
opinions of courts which relate to a doctrine of law not
necessarily in issue in the case then before the court are not to
be regarded as deliberate and binding enunciations of such
doctrines. <u>Carroll v. Carroll's Lessee</u>, 16 How. 275, 287, 14 L.Ed.
936 [1853]. It is probable that there is no volume of the Supreme
Court Reports in which the idea is not advanced that expressions of
opinion not necessary to the determination of the case are to be
regarded as dicta.").

Third, even if the list of motions in Section 636(b)(1)(A) is
not exhaustive, but instead also implicitly encompasses any
pretrial matter deemed dispositive, a magistrate judge may rule on
a motion to remand because such a ruling is not "dispositive of a
claim," <u>Reddick</u>, 2011 WL 6000552, at *2. <u>See, e.g.</u>, <u>Lomick v. LNS</u>
<u>Turbo, Inc.</u>, No. 3:08CV296FDW, 2008 WL 5084201, at *1 (W.D.N.C.
Nov. 25, 2008) (unpublished) (Whitney, J.) ("A ruling on a motion
to remand is nondispositive because it does not resolve the dispute
and is solely concerned with which court will hear the claims and
defenses."); <u>Drye v. Bankers Life & Cas. Co.</u>, No. 3:05CV115-MU,
2006 WL 2077562, at *2 (W.D.N.C. July 24, 2006) (unpublished)

(Mullen, J.) ("The remand order does not dispose of the claims or defense of any party, but merely determines which forum has jurisdiction of the case. It does not resolve the substantive rights and obligations of the parties."); Wachovia Bank, 397 F. Supp. 2d at 702 ("A motion to remand, like a motion related to venue, is concerned only with which court will hear the claims and defenses, not with resolving the merits of those claims and defenses. . . . [A] remand order does not resolve or dispose of the case . . . ."); but see, e.g., Carter v. Cummins, No. 2:10CV1408DCN-RSC, 2010 WL 5139842, at *2 (D.S.C. Dec. 10, 2010) ("This court holds that a magistrate judge's order to remand is dispositive and thus, should be treated as [a recommendation].").

Accordingly, the undersigned Magistrate Judge will dispose of the instant Motion to Remand by order.[8]

### III. Fraudulent Joinder

The fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir.

---

[8] The distinction between order and recommendation may make little, if any, practical difference in this context; the assigned United States District Judge's review of the undersigned Magistrate Judge's legal conclusion regarding the fraudulent joinder issue raised by the instant Motion to Remand likely would take the same shape whether conducted under the "contrary to law" provision of Section 636(b)(1)(A) (applicable to non-excepted pretrial rulings) or under the de novo standard that governs review of recommendations under Section 636(b)(1)(B). See, e.g., Haines v. Liggett Group Inc., 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law.").

1999).  To establish fraudulent joinder, the removing party must show either "'[t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993) (quoting <u>B., Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (5th Cir. 1981)) (emphasis in original).  An assertion that the plaintiff would be unable to establish a cause of action may mean "'either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists.  In other words, a joinder is fraudulent if there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming.'" <u>AIDS Counseling and Testing Ctrs. v. Group W. Television, Inc.</u>, 903 F.2d 1000, 1003 (4th Cir. 1990) (quoting <u>Lewis v. Time Inc.</u>, 83 F.R.D. 455, 460 (E.D. Cal. 1979)) (emphasis added by <u>AIDS Counseling</u>) (additional internal quotation marks and citations omitted).

The burden to establish that the district court has jurisdiction rests on the party seeking removal.  <u>See</u> <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994).  Morever, a removing party "alleging fraudulent joinder bears a heavy burden - it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422,

424 (4th Cir. 1999). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Id.

"If a court finds even a 'slight possibility of a right to relief' or a 'glimmer of hope' for the plaintiff, the matter should be remanded because the question of whether a cause of action exists against a nondiverse party is a state law issue to be decided by a state court." Systems2 Commc'ns Inc. v. Comcast Corp., No. 7:10-cv-00501, 2011 WL 335254, at *2 (W.D. Va. Jan. 27, 2011) (unpublished) (quoting Hartley, 187 F.3d at 426). "In order to determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" John S. Clark Co. v. Travelers Indem. Co., 359 F. Supp. 2d 429, 436 (M.D.N.C. 2004) (Bullock, J.) (quoting AIDS Counseling, 903 F.2d at 1004); accord Lohr v. Conseco, Inc., No. 1:07CV374, 2008 WL 5263768, at *3 (M.D.N.C. Dec. 17, 2008) (Beaty, C.J.) (unpublished). In this case, Caterpillar contends that Smith Trucking's joinder of Rush Trucking is fraudulent both because no cause of action exists against Rush Trucking (see Docket Entry 22 at 2-5) and because Smith trucking has "no intent to obtain a judgment against Rush Trucking" (Docket Entry 2, ¶ 21).

*A. Existence of a Cause of Action against Rush Trucking*

-16-

Smith Trucking contends that it has legitimate claims against Rush Trucking for breach of both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. (See Docket Entry 13 at 6.) "It is well-established under North Carolina law that a plaintiff may recover for a breach of implied warranty of merchantability . . . if the plaintiff can establish the following elements: '(1) a merchant sold goods, (2) the goods were not 'merchantable' at the time of sale, (3) the plaintiff (or his property) was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller.'" Horne v. Novartis Pharm. Corp., 541 F. Supp. 2d 768, 786 (W.D.N.C. 2008) (quoting Reid v. Eckerds Drugs, Inc., 40 N.C. App. 476, 480, 253 S.E.2d 344, 347, review denied, 297 N.C. 612, 257 S.E.2d 219 (1979)); see also N.C. Gen. Stat. § 25-2-607(3)(a).

"[A] claim for breach of the implied warranty of fitness for a particular purpose requires proof that 'the seller at the time of contracting ha[d] reason to know of any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods[.]" Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Directors v. DJF Enters., Inc., 697 S.E.2d 439, 447 (N.C. App. 2010). Furthermore, like a claim for breach of the implied warranty of

merchantability, a claim for breach of the implied warranty of fitness also requires timely notice to the seller of the breach. <u>See</u> N.C. Gen. Stat. § 25-2-607(3)(a).

As it relates to Rush Trucking, the First Amended Complaint alleges that:

• Rush Trucking sold three of the trucks in question to Smith Trucking (<u>see</u> Docket Entry 5, ¶¶ 17, 20, 21);

• "Rush Trucking . . . had reason to know the particular purposes for which Smith Trucking required the [t]rucks and that Smith Trucking was relying on Rush Trucking . . . to select and furnish suitable [t]rucks for Smith Trucking" (<u>id.</u>, ¶ 19);

• "within a reasonable time after discovering the noncomformities in the [t]rucks, and before any substantial change in the condition of these [t]rucks had occurred, Smith Trucking notified defendants that Smith Trucking was revoking acceptance of these [t]rucks" (<u>id.</u>, ¶ 33);

• Rush Trucking "failed and refused to refund the purchase price or reclaim the [t]rucks for which Smith Trucking had revoked its acceptance" (<u>id.</u>, ¶ 34); and

• "Smith Trucking has been damaged" as a result (<u>id.</u>, ¶ 35).

A comparison of the foregoing allegations to the elements of Plaintiff's North Carolina causes of action indicates that, under North Carolina's pleading standard, Plaintiff sufficiently stated

a claim for relief.  See Holleman v. Aiken, 193 N.C. App. 484, 490-91, 668 S.E.2d 579, 584-85 (2008) ("[A] court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not provide any set of facts to support his claim which would entitle him to relief.").[9]  Because there is at least a "'slight possibility of a right to relief' or a 'glimmer of hope' for the plaintiff," Systems2, 2011 WL 335254, at *2, a review of the pleadings weighs in favor of remand "because the question of whether a cause of action exists against a nondiverse party is a state law issue to be decided by a state court," id.

Caterpillar, however, argues beyond the pleadings in contending that Smith Trucking has offered no evidence regarding notice of breach of warranties to Rush Trucking - an essential element of Smith Trucking's claims.  (See Docket Entry 22 at 3.) In support of this contention, Caterpillar notes that, "[i]n response to [Rush Trucking's] request for production, Plaintiff

---

[9]  In considering the sufficiency of a plaintiff's claims against an argument of fraudulent joinder, "pleadings are held to the state court's pleading standards, and North Carolina has declined to adopt the heightened standard set forth in [Bell Atlantic Corp. v.] Twombly[, 550 U.S. 544 (2007)]."  Dockery v. 803 Trucking, No. 5:11-CV-203-FL, 2011 WL 3444463, at *2 (E.D.N.C. Aug. 8, 2011) (unpublished) (citing Holleman, 193 N.C. App. at 490-91, 668 S.E.2d at 584-85); accord Phillips v. Sheetz, Inc., No. 5:11-CV-90-RLV-DSC, 2011 WL 5169984, at *3 n.1 (W.D.N.C. Oct. 31, 2011) (unpublished) ("All parties presume the state pleading standards to apply, and they are right to do so."); Williams v. Williams, No. 1:10-CV-783, 2011 WL 863501, at *6 (E.D. Tex. Mar. 9, 2011) (unpublished) (noting that "majority of courts which have addressed this issue favor application of the state pleading standard" and adopting that position); DNJ Logistics Grp., Inc. v. DHL Express (USA), Inc., 727 F. Supp. 2d 160, 165 (E.D.N.Y. 2010) ("The more logical choice . . . is to apply state pleading standards because the purpose of a fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims." (internal quotation marks and citation omitted)).

admitted that it had no documents to support its allegation that it provided notice of revocation." (<u>Id.</u> at 4.) Caterpillar also asserts that, in response to Rush Trucking's interrogatories, Smith Trucking stated that it had orally informed Lynn Falke that it was going to return the subject trucks, but Smith Trucking had no documents evidencing this claim and could not recall the date of this communication. (<u>Id.</u>; <u>see also</u> Docket Entry 2-6 at 4.) Moreover, according to Caterpillar, Lynn Falke is not a representative, agent or employee of Rush Trucking, but rather an employee of Carolina Tractor. (Docket Entry 22 at 4.)

In response to Caterpillar's foregoing argument, Smith Trucking notes initially that, at this point in the proceedings, it has "never had the opportunity to submit its evidence to a court at a summary judgment hearing or otherwise. Depositions were not yet taken in the State Court action and are now not allowed at the federal level pending the Rule 26 conference." (Docket Entry 26 at 2.) In addition, with its Reply Brief, Smith Trucking provided the Court with the Affidavit of William E. Smith (Docket Entry 26-1), in which Smith, the principal of Smith Trucking, asserts that he "do[es] not use email as a regular part of [his] business and therefore ha[s] no emails on the issues" (<u>id.</u>, ¶ 5), that he made a phone call "notifying Rush [Trucking] of the problems with the trucks . . . within a week of placing the trucks in operation" (<u>id.</u>, ¶ 7), and that he "discussed the problems many times with

Rush [Trucking] and they were very much on notice of the defects and problems with the trucks" (id., ¶ 8).

The parties' submissions have raised competing issues of fact, which are not appropriately weighed by this Court on the instant Motion to Remand. Rather, in such a situation, the Court must "resolv[e] all issues of . . . fact in the plaintiff's favor." Hartley, 187 F.3d at 424. Accordingly, Caterpillar's assertion that no cause of action exists against Rush Trucking because of an absence of evidence of notice to Rush Trucking fails to provide a proper basis for a finding of fraudulent joinder.

*B. Intent to Obtain Judgment against Rush Trucking*

Caterpillar also contends that the joinder of Rush Trucking is fraudulent because Smith Trucking has no real intent to obtain judgment against Rush Trucking. (See Docket Entry 22, ¶ 21.) In support of this contention, Caterpillar points to an email from counsel for Smith Trucking to counsel for Carolina Tractor and counsel for Rush Trucking offering to dismiss the action against either Carolina Tractor or Rush Trucking (but not both) for $15,000. (See Docket Entry 22 at 5; see also Docket Entry 2-3.) In said email, counsel for Smith Trucking notes that the offer is only good with respect to the first of the two parties to accept because of "very obvious forum issues." (Docket Entry 2-3 at 2.) Caterpillar also asserts that, "[u]pon information and belief, counsel for Smith [Trucking] admitted to counsel for Rush Trucking

that Rush Trucking 'did not owe a dime' and was only sued to prevent removal to federal court, and further suggested that counsel need not work on the case or incur defense costs as a result of [Smith Trucking]'s offer [to settle] and [Smith Trucking]'s counsel's affirmative representation that it would not pursue a claim against Rush Trucking." (Docket Entry 2 at 4.)

Smith Trucking's desire to avoid creating a basis for federal jurisdiction as reflected by its documented settlement offer to Rush Trucking and Carolina Tractor does not preclude the possibility that Smith Trucking intends to seek judgment against Rush Trucking. See generally Willard v. United Parcel Serv., 413 F. Supp. 2d 593, 598 (M.D.N.C. 2006) (Osteen, Sr., J.) ("Defendants conclude that . . . plaintiff named the estate as a defendant in this matter for the sole purpose of defeating jurisdiction. It should first be noted that defendants' statement . . . misses the mark to some degree because of its focus on plaintiff's motivation in naming the estate as a party. This is because the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined." (internal brackets, citations, and quotation marks omitted)); City of Neodesha, Kan. v. BP Corp. N. Am. Inc., 355 F. Supp. 2d 1182, 1189 (D. Kan. 2005) ("[P]ersonal deductions from plaintiff's litigation strategy are generally insufficient to meet the heavy burden to show fraudulent joinder."). Moreover, the Court declines to find

fraudulent joinder based on Caterpillar's bare assertions ("upon information and belief") as to alleged statements by Smith Trucking's counsel to Rush Trucking's counsel. See generally Pimal Prop., Inc. v. Fireman's Fund Ins. Co., No. 04-1178-PHX-JAT, 2005 WL 3273559, at *3 (D. Ariz. Nov. 29, 2005) (unpublished) (granting motion to remand where defendant failed to present "evidence of fraudulent joinder or improper motive on the part of the [p]laintiffs" (emphasis added)).

In sum, Caterpillar has not carried its burden of establishing that Rush Trucking has perpetrated a fraud regarding joinder that would sustain the removal of this case.

## IV. Attorney's Fees and Expenses

Smith Trucking asks that the Court "award fees incurred as a result of the improper removal pursuant to 28 U.S.C. § 1447(c)." (Docket Entry 13 at 8.) The cited statutory section provides in relevant part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of fees under this provision "is not made as a matter of course but rather where, absent unusual circumstances, 'the removing party lacked an objectively reasonable basis for seeking removal.'" Canadian Am. Ass'n of Prof'l Baseball, Ltd. v. Ottawa Rapidz, 686 F. Supp. 2d 579, 589 (M.D.N.C. 2010) (Schroeder, J.) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126

S. Ct 704, 163 L. Ed. 2d 547 (2005)). "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter." <u>Martin</u>, 546 U.S. at 140.

On the instant facts, Caterpillar had an "objectively reasonable basis for seeking removal." <u>Canadian Am. Ass'n</u>, 686 F. Supp. 2d at 589. Although Caterpillar ultimately failed to carry its heavy burden of establishing fraudulent joinder, given the absence of documentation as to the notice element of Smith Trucking's claims (only later overcome by Smith's affidavit), Caterpillar had sufficient grounds to seek removal to avoid an award of attorney's fees to Smith Trucking under § 1447(c).

## V. Conclusion

The undersigned Magistrate Judge has authority to rule on the instant Motion to Remand. Caterpillar has failed to establish that Smith Trucking fraudulently joined Rush Trucking as a party and no basis thus exists for removal. However, because Caterpillar had an objectively reasonable basis for pursuing removal, an award of attorney's fees and expenses to Smith Trucking is unwarranted.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447(c) (Docket Entry 12) is **GRANTED IN PART** and **DENIED IN PART** in that this case is remanded to the

General Court of Justice, Superior Court Division, Surry County, North Carolina, but Plaintiff is not awarded attorney's fees and expenses under 28 U.S.C. § 1447(c).

**IT IS FURTHER ORDERED** that this Order is stayed for 21 days because "[a] party may serve and file objections to the order within 14 days after being served with a copy.  A party may not assign as error a defect in the order not timely objected to.  The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  If any party files an objection to this Order, the 21-day stay shall continue in effect until further order of the Court, but, if no objections are filed, at the end of the 21-day period, the Clerk shall send a certified copy of this Order to the Clerk of the General Court of Justice, Superior Court Division, Surry County, North Carolina.

/s/ L. Patrick Auld
L. Patrick Auld
United States Magistrate Judge

January 24, 2012